Good morning. Thank you. May it please the Court, Your Honors, Mr. Brownfield, Counsel. My name is Andrea Clare on behalf of the Appellants Bill and Janet Brownfield. This case concerns the District Court's conclusions of law and applications of fact, as set forth in its Findings of Fact and Conclusions of Law Issued on May 5, 2008, in which case the Court held Bill Brownfield liable for breach of fiduciary duties and tortious interference. And I know I don't have to remind you, but on behalf of my client, I must caution you to be careful when considering the merits of this case, as the consequences are devastating to my clients. We have tortious interference, breach of fiduciary duties. These are not dischargeable debts. The standard of review here is de novo, as we are addressing mixed questions of fact and law. It's also de novo review when you're evaluating state law determinations from the District Court. Bill Brownfield challenges the Court's conclusions primarily because the Court has failed to properly define the contours of an at-will employee's relationship with respect to their fiduciary duties. As a consequence, the Court applied a higher standard than required by law and an incomplete rule of law. The Court entirely missed relevant portions from the restatement that are necessary to properly evaluate Bill Brownfield's conduct and determine whether or not a violation has occurred. According to the case Kieberts, which the Court puts an emphasis on, that case advises us to look to the restatement in shaping these duties. However, the Court stopped short. They looked at the restatement second of agency, section 393, which indicates an overarching principle that an agent is subject to a duty not to compete with the principle concerning matters relative to the agency. What duty did your client owe Keystone? He owed a fiduciary duty. He certainly owed a duty of loyalty. However, that duty of loyalty is defined further when you look at it with competition. There are societal considerations which outweigh a principal's interest in the duty to disclose. Well, but, you know, there's not a non-competition agreement here. So he obviously would be free to walk out and compete with his former employer. But even without that, assuming he did nothing while he was at the company, he still would be under an obligation not to use confidential information, not to interfere with the contract. The difficulty I'm having, and one that would be helpful for you to address, is that the series of conduct that he engaged in while he was at the company. That seems to me to be the most problematic situation that you have, because he basically is planning, you know, he of course can plan to leave, but he's basically planning in contravention of a contract that's in place with his current employer. Why isn't that a breach of loyalty or a breach of duty? Well, first of all, he doesn't have a contract with his employer. He's an at-will employee. No, no, no, but his employer had a contract, had various contracts with third parties. Correct, with respect to Griggs and Sons. Right, with the Onion people. There's no formal contract between Griggs and Sons and Keystone Fruit Marketing. But that doesn't matter, does it? That doesn't matter to the extent that they could leave at any time, as well as Keystone could leave at any time with regard to that contract. The conduct that the court looked at, it's our position, it's not sufficient to show breach of duty when you look at the restatement as a whole and what it indicates that certain preparations are fine, that an employee can make plans and take active steps and doesn't have a general duty to disclose this to the new employer. There's no evidence in the record that suggests that Bill Brownfield himself actually solicited Griggs to leave. There's no evidence that Bill Brownfield brought up the idea of opening up a new competing firm. This was, the evidence shows that Griggs and Sons actually solicited Bill Brownfield to come and work for them. Well, one of the things you start with is that the court made some credibility findings that are pretty hard for us to overturn in terms of how he viewed Mr. and Mrs. Brownfield's characterization of events. Are there specific findings, as I'm looking at the findings of fact and conclusion of law, that you think where the judge just went wrong that you could point us to that we could look at? Yes, Your Honor, I've accepted the facts and the credibility determinations that the district court made. Accepting all those is true. The circumstances that the court points out that causes them to conclude that a breach has occurred are insufficient when you look at the full restatement. The specific conduct that they allege Brownfield did that was wrongful was that they, that Brownfield actually attempted to procure seeds for Griggs. He would have done that for any of his clients. That's not unusual, and that's certainly not unlawful. They've indicated that he was working with them to start a competing business. Again, he could make preparations. The court isn't very clear as to what specifically Brownfield had done in that regard. They also indicated that primarily because he failed to notify Keystone, that was the breach of fiduciary duties. They also said that there was a meeting between Country Fresh and Griggs, and even assuming that's true, that's not enough to establish a breach of fiduciary duty. The court basically concludes, and our problem with it is that they had indicated that Bill Brownfield worked with Griggs and in doing so solicited Griggs away from Keystone Fruit Marketing. We're not sure what in doing so is with regard to Bill Brownfield working with Griggs, but certainly there's no evidence to support the fact that Bill Brownfield solicited Country Fresh. Would you agree that this email about plug your nose and jump in is key or was key to the district court's finding? I don't agree that that's key. I know the district court places a large emphasis on the fact that Bill Brownfield knew that Griggs was going to leave. I've not phrased my question well. If one takes the view that that email is evidence that there were plans afoot to start a new business while your client was still with Keystone and that your client, Mr. Brownfield, knew about it, does that become important? I don't think it does. The court places emphasis on that, and as I've indicated, that's why they're finding that there was a breach of fiduciary duty because Bill Brownfield didn't tell his employer that this client was planning on leaving, that this client had no intentions on renewing their contract at all. But the email could, A, have a perfectly innocent explanation, and it could be, B, that your client knew nothing about it, and therefore it's no evidence of plans afoot to violate whatever duty he had toward Keystone. But the district court didn't believe either your client or his wife, correct? Correct. We still agree and side with our clients that there was no knowledge. However, assuming that the district court was correct, they made those credibility determinations, they don't believe our clients, even if they don't believe our clients, what he did and the fact that he knew about it isn't detrimental. It's not dispositive to whether or not he breached his fiduciary duties because the restatement says he was able to. The restatement says that even if an employee plans to leave, he's got no duty or obligation to inform the principal, even though the principal would like to know. And I think the court missed that. The district court missed those other relevant statements with regard to competition, and then they made their decision based on the overarching principle, which is very clear that you have an undivided loyalty to your principal. This is information the principal would like to know. Going down further in the restatement, the restatement specifically says, no, even though the employer would like to know, the employee does not have to tell the principal, and that doesn't establish a breach of fiduciary duty. When was the Sweet Clover business started? I believe it was started shortly after the termination of Bill Brownfield. They had licensed earlier, but they had officially started shortly after. What I meant was, when was it formed? Do you know? Is that in the record? I'm not sure if it is in the record. I know they had started making preparations. They've obtained their license six months prior to Bill Brownfield's termination. Okay. And his last day at Keystone was July 14, 2005? I believe so. That's the day he was terminated. Correct. And four days later, Sweet Clover opens, and he's the sales manager. Correct. That's what the record shows. But when you look at the law, that's not dispositive. The fact that he went ahead and started competing right away doesn't establish a breach of duty. And it's this notion that the court looks at. What would it take? What would it take to establish a breach of duty? Soliciting a customer. Soliciting a customer away when you go into competition. But if Griggs came to him and said, we're going to leave, we'd like you to come with us, that's okay? That's okay. Even though he then facilitates it, says, well, look, here's some plans. I've got big plans for you guys. Here's other things that we could do. If he says that before he leaves, is that a problem? I don't think that's a problem. But there's nothing in the record that says that he did that either, that he actually guided them and was instrumental in teaching them how to go about doing it. I think the court faults Bill Brownfield a lot for having a superior expertise in this area. The fact that Griggs would like somebody like Bill Brownfield is certainly important, but it's not an end-all for the district court to place him in breach of his duty just because he's got this expertise. The district court also places a huge emphasis on a large salary, that he was being paid this large salary while making these preparations. But the law doesn't look at what his salary was, and it doesn't look at what exact preparations he's making as long as he's not soliciting customers. If he's not taking customers away from his employer, asking them, urging them. Even if he's facilitating customers who may be predisposed to leave. Is he taking customers away if he's facilitating customers who are thinking about leaving, and his departure with them becomes a key part of their ability to leave Keystone? I don't think that, I think the circumstances here don't suggest that. He doesn't owe any duty of loyalty? He owes a duty of loyalty, but he doesn't owe a duty to tell them what Griggs is thinking, and the fact that he may be making preparations to leave. Does he owe a duty to Keystone to refrain or keep Griggs at arm's length to say, look, I cannot do that if you leave, you can come and talk to me after you do that. But I owe a duty to Keystone until such time as you actually go, and then we can talk. And that's different from saying, I'm in on the plans, here's what we do. And I've got big plans for you guys, and I'll be happy to join you, and here's what, we've got to plant another 50 acres, or 100 acres, or 5,000 acres, whatever it was of onions, because you guys are going to go someplace with me. No, I think that Bill Brownfield gets an opportunity to look at the conditions. He can do that. He can do that. But even before Keystone's been alerted by Griggs that they're leaving? To a certain extent. Now, if you look at the record, I don't believe that we've got the activity to that extent where he's actually facilitating them and guiding them. Griggs had their own idea to start their own business. They asked Brownfield to come and join him. And the record rejects Bill Brownfield's testimony that he didn't know, but even if he did know, the fact that Griggs came to him is dispositive, the fact that he didn't come to Griggs and convince them to leave Keystone. He may have made what the court calls disparaging comments about his employer, but that's not unlawful either. The fact that he had concerns about the way Keystone was changing their management structure is not dispositive. Can he make disparaging, unless supposedly Griggs wasn't inclined to leave, if Griggs is undermining his employer by making disparaging comments about them as he breached his duty of loyalty? Maybe, but that didn't happen in this case. You're down to about a minute. Do you want to save some time for a bubble? Yes, Your Honor. Thank you very much for your argument. We'll hear from Keystone at this time. Counsel? Thank you, Your Honor, and may it please the Court. My name is George Arend, and I'm here today on behalf of Keystone Fruit Marketing. The loyalties that Bill Brownfield owed to Keystone Fruit Marketing, or the duties that Bill Brownfield owed to Keystone Fruit Marketing as its employee were obedience, due care, and loyalty. He breached his duties of loyalty in three ways, only one of which I really hear talked about, discussed in the briefing, or talked about in oral argument today. Can he think about leaving while he's employed there? Absolutely. Can he talk with his family about leaving while he's still there? Yes. Can he talk with Griggs? He has to be careful. What the law says is, and this illustrates the intensely factual nature of this appeal, what the law says is mere preparation to compete with an employer is not enough to establish a breach of loyalty. The question presented by this case is whether or not Bill Brownfield went beyond mere preparation, and I think the credibility determinations that Judge Whaley made in this case are key to that, and I think the historical facts that go into the judge's conclusion or final finding that Mr. Brownfield solicited Greg and Son on behalf of Sweet Clover while he was working with Keystone Fruit Marketing are pretty compelling. Let me pose a hypothetical to you. I have family members who are farmers, but let's put it in the context of what we all practice, the law. I'm an at-will employee of a law firm. I'm not a partner, but I'm not happy with the way the firms run, and I've been working with ABC Company as a client. They're delighted with the professional services I've provided them, and I have lunch with the owner of ABC, and I tell that person, I'm thinking of leaving, and the president of ABC says, That's great. If you do, I'll be happy to send you our business. Is that a violation? The only reason I would hesitate to say whether that's a violation is because there are rule of professional conduct issues that come into play with a lawyer that I haven't fully thought through, and I wouldn't want to just pop off. Put them aside. Yeah, putting those issues aside. I'm an at-will employee. I can leave that law firm any time I want, including one minute before that lunch or one minute after it. I have signed no non-competition clause. I'm simply dissatisfied with the way the firm treats its clients and its employees, and I'm going to leave. I'm thinking about leaving, and I tell a client of the firm that I'm thinking about leaving. Is that a problem? Notice of leaving is not a problem. I don't think it is a problem. Okay, well, what happened here that distinguishes that from the hypothetical I just spun out? Well, we don't know that Mr. Brownfield did anything remotely similar to that hypothetical. What we do know is in October of 2004, nine months before he was fired by Keystone Fruit Marketing, he knew that Gregg & Sons was thinking about leaving. He was, the closest analogy, getting back to the law firm setting, would be a relationship partner for this client. He was the face of Keystone Fruit Marketing for Gregg & Sons. So if I'm a lawyer working in a firm, same thing, no contract, at will, and I learn that a client of the firm is thinking about leaving the firm, and I don't tell the firm about it, have I violated any duty of loyalty? Yes, you have. You have a duty to disclose all matters of the partnership related to the scope of your employment with that. Just the mere fact that a client of the firm is dissatisfied and may be thinking about severing the relationship. Absolutely, because if you don't tell the partnership that, then you deprive the partnership of the opportunity to preserve that relationship. What's your best case that establishes that common law duty? I don't have a Washington case, which this is a Washington issue. How about a Ninth Circuit case? I have restatement provisions, which I think that the Washington courts would follow, and it's in Restatement Chapter 8, Restatement 3, Chapter 8, and then the corresponding provisions, and I forget the exact section numbers to cite you, but they are in the brief. We have one step beyond that in this case. We have an affirmative concealment of the fact that this company, Gregg & Sons, intended to leave. You don't tell the law firm about the dissatisfied client by simply not telling them that's affirmatively withholding? No. That's not giving notice of matters related to your agency relationship. That's a breach of the duty of loyalty. Beyond that, Mr. Brownfield was charged with responsibility to obtain a written contract from Gregg & Sons for the following year. He falsely assured Keystone Fruit Marketing that he had done that. That would be like you, to follow up in this law firm analogy, telling your partners that you had this client locked up for the next year's business when, in fact, you didn't and you intended to leave. That is a further breach, and I would submit a significantly worse breach, and it's, of course, what Judge Whaley found occurred in this case, and that finding has not been challenged on appeal. All of this, the lack of notice, the concealment, or the lie about the contract, deprived Keystone Fruit Marketing of the opportunity to maintain this relationship. Beyond that, Mr. Brownfield disparaged Keystone Fruit Marketing, told Gregg & Sons things that were false, as the trial court found, about how Keystone Fruit Marketing was undermining its business by engaging in alliance with another marketer. That was false. It undermined the relationship, and apart from preventing Keystone Fruit Marketing from preserving its relationship by not having notice, it actively, Mr. Brownfield actively sabotaged that relationship, and then he even goes further by assisting Sweet Clover Produce. He takes them on a secret trip to a prime intermediary for the market for some of these onions, country fresh onions. He procures seed on behalf of Sweet Clover Produce. He makes preparations to sell a huge, what is called renegade sweet onion crop of 60 acres. That crop was concealed from Keystone Fruit Marketing, even though it was Let's go back to what he's doing for the Sweet Clover Produce. All of that, according to the restatement, you can actually purchase a rival business. You can get ready to go into competition. All of that would be legitimate, wouldn't it? Except for the fact that it's using Gregg & Sons Onions, which was an existing customer of Keystone Fruit Marketing. That's what distinguishes it. If Mr. Brownfield had gone out and done this exact same behavior with somebody who was not an existing customer of Keystone Fruit Marketing, with whom Keystone Fruit Marketing had an existing contractual relationship, then it would be okay. But now Gregg's could leave any time, correct? As counsel pointed out, there's no written contract? Correct. It was an at-will relationship. An at-will relationship. Yes. And Gregg's had already reported some dissatisfaction. They weren't necessarily wedded to stay there, correct? I think so, yes. In the fall of 2004, they reported some dissatisfaction. They certainly hadn't told Keystone Fruit Marketing anything remotely close to an intention to leave or considering leaving. So I guess I'm having some trouble with the intentional interference when there's no real contract. There may be under the restatement some business expectation, but what is that when they could walk out the door at any minute? Because basically didn't the judge tag them with about a year's worth of profits related to that company? Yes. And the reason is, and that gets to more causation than liability and a breach of the duty of loyalty. But these onions, this is a huge, a massive amount of onions that needs to be sold. I started by saying that the sweet, the concealed sweet onion crop was 60 acres, which is approximately double the size of the average sweet onion farm in the state of Washington. The hybrid onion. See, I'm having a little trouble understanding why him talking to them and them deciding on their own. I mean, he didn't make them go in and plant those onions. He concealed it from Keystone Fruit Marketing. And the point is you need to pre-sell these onions. This is a perishable commodity. You don't just decide right before they're harvested, which is when, Mr. Brown, when these plants were discovered in July of 2005. You don't just decide to sell a crop then. And then their objection is that he upset the market, but not their contract. Because their contract, they weren't expecting to have 60 acres, right? Correct. Of the sweets, they were expecting to have 10 acres, and of the others they were expecting to sell and had engaged in pre-selling efforts for 1,100 acres. Right. So where's the causation in terms of the tortious interference? The causation is that unless Bill Brownfield had solicited Greg and Sons well in advance of the time that these plants were discovered and Sweet Clover was open, there's no way they could have sold these perishable onions in time. Because it takes a year. You can't just go out and sell a massive crop of onions like this overnight. You have to pre-sell approximately 50% of it at least in order to have any reasonable prospect of getting the whole crop sold. At least that was the evidence that was presented at trial. I'm not an expert in that area, but that's what the witnesses testified to. So the Grigs could not at will expect to terminate this contract in July 15th of 2005 when they did and expect to sell their onions unless Bill Brownfield had been helping them sell those onions beforehand. What's the evidence that he actually had pre-sold the onions for them? He denied that he had pre-sold the onions. The evidence is that the onions were sold and that you can't sell that size of quantity of onions without engaging in substantial pre-sale evidence. So it's an inference from the evidence that was presented at trial. That's a pretty thin inference. Do you have any evidence of somebody coming in and saying, here's how the market worked, here's how the onions were pre-sold? Because the expectation of your client is the 10 acres, right? So now we're basically tagging him with pre-selling acres that, one, weren't in the expectation. That's what I'm having some trouble with. Well, that's just part. There's a sweet onion crop and a hot onion crop. So the 10 acres relate solely to the sweet onion crop. The considerably larger hot onion crop was, I mean, that was still subject to pre-sale requirements. But did you have any evidence of how that pre-sale took place? Other than the inference from the other evidence in the case, such as making trips to buyers, procuring seed, concealing the existence of these crops, of the extra crops from Keystone Fruit Marketing, and knowing about this for months in advance, I think that that's a, again, that gets to a causation issue, which we really haven't, hasn't been argued or briefed by either of the parties here. And so I'm going off the top of my head a little bit. But I think it is what the law on, I mean, that's a factual issue, too, which is subject to the clearly erroneous standard of review. What the law on that says is if you've got an existing relationship and the case is cited in our materials, it doesn't matter that it's an at-will relationship if you have an expectation that it will continue. I mean, Keystone Fruit Marketing had an expectation that it would continue because Bill Brownfield remained employed, because they didn't have notice of Griggs' intention to leave, or these other activities that the Griggs and Mr. Brownfield engaged in between the time that they decided to leave and the time that they actually did leave. If Mr. Brownfield had had an employment contract with Keystone, a contract which included a covenant not to compete, equitable principles would come into play in terms of preventing him from pursuing his living. We have a line of cases that go back to the opera singer in London that we all learned about in law school. You find it curious that he's treated more harshly not having a contract and not having a covenant not to compete than he would be if he had one? I'm not sure that I agree with the premise of the question that he's treated more harshly. It's well settled that you can't compete with your principal during the duration of the agency relationship. That is a different question from, do you compete afterwards? Now, the equitable considerations that I'm aware of that come into play are, it's got to be reasonable in duration, it's got to be reasonable in geographic scope, it's got to be reasonable in terms of other factors like product or something like that. One of the things that I think is well settled in the law is that a non-compete with respect to existing customers of KFM for a reasonable period of time, in this case essentially it's one year, is a reasonable non-compete. Now, this one arises from Mr. Brownfield's actions during the relationship, but I'm having trouble seeing how that is harsher than a covenant not to compete would be after the relationship. I don't know if Your Honors have any questions about the other issues raised by the appeal or the cross-appeal. I'm content to rest on the briefing for the cross-appeal issues, but I did want to make a point that with respect to the bonus claim that Mr. Brownfield has, he's assigned error to the trial court's exclusion of his expert witness, and the summary judgment that was granted then on the bonus claim since there was no remaining evidence. I don't know if there are any questions, but I wanted to make sure I gave the Court an opportunity to ask them before I sat down. I don't see any. Thank you. Thank you for your argument. Rebuttal. If it pleases the Court, I'm John Schultz and I was trial counsel, and I want to echo the Court's comment that this is at-will employment, and exactly what occurred is the explanation that you, Judge Hawkins, gave about the lawyer who is talking to a client, and somehow they have created this case when there is at-will employment, no covenant not to compete. Mr. Brownfield gets absolutely nothing. He goes to work for his former client in a relationship which is now ended and over with, but he gets saddled with a $537,000 non-dischargeable judgment because of alleged – he's accused of taking something. He didn't get anything but a job. He's a salaried employee who's working for Keystone. At-will, they fired him. When Griggs left, he went to work for Griggs. But it wasn't that he just got fired and then he went to work for Griggs. It's not like he was out looking for a job and Griggs decided to hire him. It's pretty clear that he was talking with Griggs all along the way, and it seems to me that it's not unreasonable to say that the fact that Griggs knew that he was coming with them facilitated their leaving Keystone. The judge found that, although it was adamantly denied by Griggs and denied by Brownfield. I understood from Ms. Clare that you were not disputing the findings. The fact is clearly erroneous. That's true. So you're stuck with those facts unless you want to tell us differently. And the restatement would say that that conduct is perfectly proper. Restatement of the law of agency, which is applicable in Washington, Section 804. It says, and I won't read the whole thing because of time, but it says, an agent may take action not otherwise wrongful to prepare for competition following the termination of the agency relationship. The trial court simply ignored that, I think, jumped over it. Well, you had a parenthetical in there that was not otherwise wrongful. Yes, and what's wrongful about talking to the client that you have represented? He had represented this client. It was his client before he went to work for Keystone. It was his client while he worked for Keystone. Then his client set up a company. And all at once, he gets saddled with a year's sales of that company and required to return a year's wages. Now, if this doesn't sound like something unfair about that, I want to suggest it is. And you can say, what is wrongful about talking to his client? Absolutely nothing. Would you address the point that Keystone's counsel makes? And they said, well, if he had stopped at talking with them, it wouldn't be a problem. But the evidence supports, in effect, this sort of out-the-back-door-  The marketing arrangements, pre-selling marketing arrangements. There's no pre-selling marketing arrangements in this record because it didn't happen. It's not in this record, period. Now, he wants to make some sort of an inference that he was planning to sell them when he went to work for them. He did. He sold their crop like he sold their crop before he went to work for Keystone. And he sold their crop while he worked for Keystone. And when they set up their own company, he sold their crop again. The sweet clover no longer exists. He's now selling their onions for another company, but is saddled with this huge judgment, which I want to suggest should not have occurred. There was no contract. There never was a contract. You've gone over your time. Thank you, Your Honor.  Thank both sides for their argument. The case just argued will be submitted. Counsel, will you leave a card with the deputy clerk so that we've got on the record who, in fact, argued today? Certainly. Keystone v. Brownfield is, in fact, submitted for decision.
judges: Hawkins, McKeown, Bybee